UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL STEPHENS,

    Plaintiff,

v.                                                         Case No: 8:19-cv-2252-T-36AAS

CHECKR, INC.,

    Defendant.
_____/

# ORDER

This matter comes before the Court on Defendant Checkr, Inc.'s Motion to Compel Arbitration (Doc. 8), Plaintiff's response thereto (Doc. 13), and Defendant's reply (Doc. 16). In the motion, Defendant contends that Plaintiff executed an arbitration clause which contains a delegation clause directing that all issues regarding arbitrability be decided by an arbitrator, and that even if this Court were to determine arbitrability, Plaintiff's claims fall within the scope of the arbitration agreement. Doc. 8. Plaintiff opposes arbitration, arguing that the contract containing the arbitration agreement is illusory and unenforceable. Doc. 13. The Court, having considered the motion and being fully advised in the premises, will grant Defendant Checkr, Inc.'s Motion to Compel Arbitration.

**I.    BACKGROUND**

    **A.    Plaintiff's Claim**

Plaintiff filed a one-count Complaint against Defendant alleging that Defendant violated the Fair Credit Reporting Act, 15 U.S.C. § 1681-1681x ("FCRA") by failing to assure maximum accuracy of the information contained in its consumer report and by failing to verify the accuracy of the information contained in its report, causing damage to Plaintiff. Doc. 1 ¶¶ 17-19.

Specifically, Plaintiff alleges that he applied for a job and his potential employer obtained a background screening report, which was performed by Defendant. *Id.* ¶¶ 6-8. The report included a criminal records search, and Defendant inaccurately included in Plaintiff's report that Plaintiff had been charged with a criminal misdemeanor. *Id.* ¶¶ 8, 10-11. The criminal misdemeanor charge had, however, previously been expunged from Plaintiff's record. *Id.* ¶ 11. Because of the inaccuracy in Defendant's report, Plaintiff was denied the job, suffered harm to his reputation, and emotional distress. *Id.* ¶¶ 9, 13.

      **B.**    **The Terms of Service and Arbitration Agreement**

After Plaintiff filed the Complaint, Defendant moved for arbitration. Defendant submitted a copy of its Terms of Service, which was signed by Plaintiff and includes an arbitration agreement. Doc. 9-1. The initial page of Defendant's application portal, through which Plaintiff signed the Terms of Service, states as follows:

> **IMPORTANT NOTICE**: **THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION AND CLASS ACTION WAIVER. IT AFFECTS YOUR LEGAL RIGHTS UNLESS YOU OPT OUT AS DETAILED IN THE ARBITRATION AND CLASS ACTION WAIVER SECTION BELOW. PLEASE READ CAREFULLY.**

Doc. 9-1 at 7. The Terms of Service contains the same notice at the beginning of the document. *Id.* at 9. The first page of the Terms of Service also contains the following statement:

> PLEASE NOTE: SECTION 14 OF THIS AGREEMENT GOVERNS HOW DISAGREEMENTS AND CLAIMS BETWEEN YOU AND CHECKR CAN BE RESOLVED. THIS SECTION, WITH LIMITED EXCEPTION REQUIRES YOU AND CHECKR TO SUBMIT CLAIMS AGAINST EACH OTHER TO BINDING AND FINAL ARBITRATION.

*Id.* Section 14, containing the arbitration agreement, states as follows:

> **PLEASE READ THIS SECTION CAREFULLY — IT AFFECTS YOUR LEGAL RIGHTS AND GOVERNS HOW YOU AND CHECKR CAN BRING CLAIMS AGAINST EACH OTHER. THIS SECTION WILL, WITH LIMITED EXCEPTION, REQUIRE YOU AND CHECKR TO SUBMIT**

**CLAIMS AGAINST EACH OTHER TO BINDING AND FINAL ARBITRATION AND ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS, GROUP OR REPRESENTATIVE ACTION IN COURT.**

**A. Agreement to Arbitrate**

In exchange for the benefits of the speedy, economical, and impartial dispute resolution procedure of arbitration, You and Checkr mutually agree to give up our right to resolve disagreements in a court of law by a judge or jury, and, as described below, agree to binding and final arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq.

You and Checkr agree that this arbitration agreement is governed by the Federal Arbitration Act, and shall survive even after these Terms or any Service terminate.

**B. Claims Covered by Arbitration**

Other than the exceptions in Section 14.D, You and Checkr agree that any disagreement, claim, or controversy arising out of or relating in any way to these Terms (including its enforcement, breach, performance, interpretation, validity, or termination), or Your access to and/or use of the Services, or the provision of content, services, and/or technology on or through the Services (hereinafter, "Claims"), shall be resolved by final and binding arbitration to the fullest extent allowed by law.

**C. Delegation to Arbitrator**

If there is a disagreement about the arbitrability of any Claim (including questions about the scope, applicability, interpretation, validity, and enforceability, of this arbitration agreement), You and Checkr agree that this threshold disagreement shall be delegated to the arbitrator (not a court) and that the arbitrator shall have initial authority to resolve such threshold disagreements.

**D. Claims Not Covered by Arbitration**

This arbitration agreement shall not require arbitration of the following types of claims: (1) small claims actions demanding $10,000 or less brought on an individual basis and within a small claims court's jurisdiction; and (2) applications for provisional remedies, preliminary injunctions, and temporary restraining orders, including those relating to actual or threatened infringement, misappropriation, or violation of a party's copyrights, trademarks, trade secrets, patents, or other intellectual property rights.

\*\*\*

**F. Arbitration Rules, Procedures, and Costs**

> You and Checkr agree that the arbitration shall be administered by the American Arbitration Association ("AAA") before a single arbitrator mutually agreed upon by the parties . . . . The arbitrator will apply the terms of this arbitration agreement and the applicable AAA rules . . . .
> **G. Severability**
>
> Except for the Class Action Waiver in Section 14.E, if any clause within this arbitration agreement is found to be illegal or unenforceable, that specific clause will be severed from this arbitration agreement, and the remainder of the arbitration agreement will be given full force and effect.

*Id.* at 17-19. The agreement also allowed Plaintiff to opt-out of the arbitration agreement within thirty days and provided the procedure for doing so. *Id.* at 19.

In a different section of the Terms of Service, Defendant included a reservation of rights that stated:

> We reserve the right, in our sole discretion, to change and revise these Terms at any time by posting the changes on the Site. Any changes are effective immediately upon posting to the Site. The most current version will be available on our website, and the Effective Date of the current version is at the top of this page. By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms, except as provided in the Arbitration and Class Action Waiver section below. We may, with or without prior notice, terminate any of the rights granted by these Terms and Conditions. We will provide you with any additional notices or choices with respect to such changes as required by applicable law.

*Id.* at 9-10.

### C.   **Defendant's Motion to Compel Arbitration**

In the Motion to Compel Arbitration, Defendant argues that the parties have a valid and binding arbitration agreement, which included the offer of presenting the Terms of Service and arbitration agreement to Plaintiff, Plaintiff's acceptance of the terms of the Terms of Service and arbitration agreement, and consideration in the form of Defendant providing free access to its services through the online portal to Plaintiff, as well as a mutual promise to arbitrate. Doc. 8 at 8-9. Defendant further argues that because the arbitration agreement contains a delegation clause

4

to the arbitrator, whether Plaintiff's claim falls within the scope of the arbitration agreement is a matter to be determined by the arbitrator. *Id.* at 10. Nonetheless, Defendant contends that even if the Court were to determine whether Plaintiff's claim falls within the scope of the arbitration agreement, the Court would find that it is. *Id.* at 11-12.

Plaintiff responds that the arbitration clause is an illusory and unenforceable promise. Doc. 13. Plaintiff contends that the reservation of rights by Defendant to change the Terms of Service at any time makes the arbitration clause illusory and lacking consideration because Defendant could change the terms of the arbitration clause at any time without notice or consent to Plaintiff. *Id.* at 2-3.

## II.     LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, the FAA reflects federal policy favoring resolution of disputes through arbitration. *Volt Info. Scis., Inc. v. Bd. of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 474-75 (1989); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (stating that section 2 of the FAA reflects a liberal federal policy favoring arbitration) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). This policy "requires courts to enforce the bargain of the parties to arbitrate . . . ." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985)).

> Section 4 of the FAA provides that:
>
> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any . . . district court which, save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.

5

9 U.S.C. § 4.  Under this provision, if the Court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," then it "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  *Id.*

The Supreme Court has identified two types of challenges to arbitration agreements:  those to the validity of the agreement to arbitrate, and those to the contract as a whole "either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006).  Additionally, the Supreme Court has directed that where a party claims the agreement to arbitrate itself is not valid, this is an issue to be decided by the Court.  *Id.* (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967).  However, if the challenge is not to the arbitration clause itself, "the issue of the contract's validity is considered by the arbitrator in the first instance."  *Id.* at 445-46.  That is because "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."  *Id.* at 445.

Additionally, "parties may agree to arbitrate the gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement."  *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)).  "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter."  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (internal citations omitted) (emphasis in original).  Such a provision is typically referred to as a "delegation provision."  *Jones*, 866 F.3d at 1264.

Delegation provisions will be enforced where there is clear and unmistakable language showing that the parties intended for gateway issues of arbitrability to be decided by the arbitrator, and not the Court. *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1246 (11th Cir. 2014) (citing *Rent-A-Ctr.*, 561 U.S. at 79-80). Language in an arbitration provision that disputes relating to the existence, validity, and enforceability of the agreement shall be resolved by arbitration have previously been held to be clear and unmistakable language delegating such matters to the arbitrator. *Id.* at 1243, 1246; *see also Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1145, 1147-48 (11th Cir. 2015) (stating that the arbitration agreement's language that "any issue concerning the validity, enforceability, or scope of . . . the Arbitration agreement" was clear and unmistakable language delegating issues of arbitrability to the arbitrator).

### III.   DISCUSSION

#### A.   Whether an Agreement to Arbitrate Exists

It is clear that challenges to an agreement as a whole are to be decided by an arbitrator. *Buckeye*, 546 U.S. at 440. In *Buckeye*, the plaintiffs entered into an agreement with the defendant containing an arbitration provision. *Id.* at 442. They later sued the defendant, arguing that it charged usurious interest rates and that the agreement violated various Florida laws. *Id.* The defendant moved to compel arbitration, and the motion was denied based on the lower court's conclusion "that a court rather than an arbitrator should resolve a claim that a contract is illegal and void *ab initio*." *Id.*

The Supreme Court reversed this ruling. *Id.* at 449. In doing so, the Court cited to three established propositions in federal arbitration law:

> First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the

>arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts.

*Id.* at 445-46. The Court explained that the FAA created a body of federal substantive law applicable in state and federal courts and it previously "rejected the view that state law could bar enforcement of [section 2 of the FAA, regarding the validity and enforceability of an arbitration agreement], even in the context of state-law claims brought in state court." *Id.* at 445.

Based on the facts of *Buckeye*, the Court concluded that because the plaintiffs "challenge[d] the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court." *Id.* at 446. Moreover, the Court explained that the decision below erred in examining whether the contract was void because the Court previously "rejected applicability of state severability rules to the arbitration agreement *without discussing* whether the challenge at issue would have rendered the contract void or voidable." *Id.* (emphasis in original). The Court reiterated that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Id.* at 449.

Here, Plaintiff argues that the arbitration agreement cannot be enforced because it, and the contract, are illusory and therefore not supported by consideration. Doc. 13. "A contract is illusory under Florida law when 'one of the promises appears on its face to be so insubstantial as to impose no obligation at all on the promisor—who says, in effect, 'I will if I want to.' " *Handi-Van, Inc. v. Broward Cty.*, 116 So. 3d 530, 540 (Fla. 4th DCA 2013) (quoting *Princeton Homes, Inc. v. Virone*, 612 F.3d 1324, 1331 (11th Cir. 2010)).[1] Illusory contracts lack mutuality—only one party

---

[1] The contract at issue here states that, except for the arbitration provision, "which is governed by the Federal Arbitration Act, these Terms are governed by the laws of the State of California . . . ." Doc. 9-1 at 20. Recently, the United States District Court for the District of Massachusetts interpreted a similar provision to mean that the law in the choice of law provision did not apply to

8

may be held to its promise because the other party is not truly bound. *Id.* "However, 'where there is any other consideration for the contract, mutuality of obligation is not essential.' " *Id.* (quoting *LaBonte Precision, Inc. v. LPI Indus. Corp.*, 507 So. 2d 1202, 1203 (Fla. 4th DCA 1987)). In the instant case, Plaintiff urges that the arbitration agreement is illusory because Defendant reserved the right, in its sole discretion, to change and revise the Terms of Service at any time by posting the changes to its website. Doc. 13 at 3. Because Plaintiff's claim that the arbitration provision is illusory is based on a separate provision of the contract, and not a provision that relates specifically or exclusively to the agreement to arbitrate, this is a challenge to the contract as a whole that must be resolved by the arbitrator in accordance with the Supreme Court's ruling in *Buckeye*.

Notably, the overwhelming majority of the cases relied on by Plaintiff either do not address the Supreme Court's ruling in *Buckeye*, or its predecessor ruling in *Prima Paint*, or contain challenges to provisions directly affecting the arbitration agreement. For example, in *Hull v. Norcom, Inc.*, 750 F.2d 1547, 1549 (11th Cir. 1985), the contract including the arbitration provision also included a provision allowing one party the right to a judicial forum. The contract therefore lacked a mutual obligation to arbitrate, which, pursuant to New York law, which was being applied, was not permitted. *Id.* at 1550. The Court in *Hull* held "that the consideration exchanged for one party's promise to arbitrate must be the other party's promise to arbitrate at least some specified class of claims." *Id.*

---

the arbitration provision, and instead ordinary principles of determining which state's law applied to the arbitration provision. *Waithaka v. Amazon.com, Inc.*, No. 18-40150-TSH, 2019 WL 3938053, at *5-6 (D. Mass. Aug. 20, 2019), *appeal pending*, No. 19-1848 (1st Cir. Aug. 30, 2019) (stating that the contract showed that the parties intent was for the choice of law provision not to apply to the arbitration provision, and applying Massachusetts law under ordinary choice-of-law rules for Massachusetts, the state in which the Court sat). Additionally, both Plaintiff and Defendant interpret the contract in this case pursuant to Florida law. Doc. 8 at 8; Doc. 13 at 2.

*Hull* is not persuasive. First and foremost, the Court in *Hull* applied New York law, which is not applicable here. Plaintiff fails to note this fact, or discuss the similarities or differences between New York and Florida law. Doc. 13 at 3. Also importantly, the *Hull* court did not discuss, because it had not yet been issued, the holding in *Buckeye* that challenges to a contract as a whole, on grounds that affect the entire agreement, are to be decided by the arbitrator, whereas challenges to the arbitration agreement itself are to be decided by the Court. 546 U.S. at 444. Moreover, the provision in *Hull* related specifically to which forum would hear which controversies, directly implicating the arbitration provision.

Here, the reservation of rights by Defendant is not contained in the arbitration agreement, but instead affects the whole contract. Although Plaintiff frames the question as whether the provision renders the arbitration agreement unenforceable, the provision clearly requires the contract to be read as a whole and affects the contract as a whole. Additionally, the reservation of rights provision provides that "[b]y continuing to access or use the Services after . . . revisions become effective, you agree to be bound by the revised Terms, *except as provided in the Arbitration and Class Action Waiver section below*." Doc. 9-1 at 9 (emphasis added). This suggests that the arbitration provision is separate from Defendants' reservation of the right to alter the agreement. Accordingly, *Hull* is of no aid in this case.

Plaintiff also relies on the Eleventh Circuit's decision in *Douglas v. Johnson Real Estate Investors, LLC*, 470 F. App'x 823 (11th Cir. 2012). In *Douglas*, the plaintiff was employed by the defendant and signed a Mandatory Dispute Resolution Agreement ("MDRA") in which the parties agreed to resolve disputes in accordance with a dispute resolution policy set forth in the defendant's employee handbook. *Id.* at 824. The MDRA included a choice of law provision stating that it was governed by Massachusetts law. *Id.* In the employee handbook, the defendant

reserved the right to revise the conditions, policies, benefits, and procedures contained in the handbook at any time without notice to the employees. *Id.* The handbook's Mandatory Dispute Resolution Policy provision contained an arbitration provision and a severability clause. *Id.*

After the plaintiff sued the defendant, the defendant moved to compel arbitration. *Id.* The plaintiff argued that the reservation of rights in the employee handbook allowed the defendant to unilaterally modify the MDRA and Mandatory Dispute Resolution Policy, making the defendant's promises in those documents illusory and unenforceable, as Plaintiff argues here. *Id.* The defendant argued that it was not illusory because the defendant was required to make changes in writing, implying notice. *Id.* The defendant did not argue that the plaintiff's challenge was one to the contract as a whole that should be decided by the arbitrator. *Id.*

The district court found that the contract in *Douglas* was illusory, denied the motion to compel arbitration, and the Eleventh Circuit affirmed. *Id.* at 825. The Eleventh Circuit explained that "[u]nder Massachusetts law, [the defendant's] promise to arbitrate was illusory" because the defendant "could modify the MDRA unilaterally . . . without [the plaintiff's] agreement or knowledge." *Id.* at 826.

The Court likewise finds the decision in *Douglas* to be inapplicable to the case at hand. Here, Defendant argues that the Terms of Service expressly excludes the arbitration agreement from its provision allowing modifications and, even if it did not, Plaintiff's challenge is one to the contract as a whole, and not to the arbitration agreement, which Supreme Court precedent mandates be decided by the arbitrator. Doc. 16 at 2. This Court agrees.[2]

---

[2] Plaintiff also relies on several out-of-circuit cases with holdings similar to that of *Douglas*. Doc. 13 at 4 (citing *In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058, 1065 (D. Nev. 2012) (stating that "[m]ost federal courts that have considered this issue have held that if a party retains the unilateral, unrestricted right to terminate the arbitration agreement, it is illusory and unenforceable, especially where there is no obligation to receive consent from, or even

By contrast, the Court does find persuasive the decision of the United States Court of Appeals for the Tenth Circuit in *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litigation*, 835 F.3d 1195, 1209-1214 (10th Cir. 2016). There, the circuit court found under factual circumstances similar to the one at hand that the arbitration agreement must be enforced because the challenge was one to the contract as a whole, and not specifically to the arbitration provision, despite the plaintiffs' efforts to frame it as such. *Id.* at 1209.

In *In re Cox Enterprises*, the plaintiffs executed an agreement that contained a provision in which the defendant reserved the right to modify the terms of the agreement at its sole discretion at any time by posting the changes online. *Id.* at 1199. The agreement also contained an arbitration clause. *Id.* The defendant moved to compel arbitration and the plaintiffs opposed the motion, arguing that the defendant's reservation of the right to change the agreement made the arbitration provision illusory. *Id.* at 1200, 1209.

The Tenth Circuit held that whether the right to modify the agreement at any time, including the arbitration provision, rendered the contract illusory was a matter for the arbitrator to decide because it was a challenge to the contract as a whole. *Id.* at 1209. The Court stated that although the plaintiffs framed their challenge as one to the arbitration provision, "general contract law does not permit such an argument on a provision-by-provision basis." *Id.* The Court explained that consideration could appear in any part of a contract and, therefore, the contract would have to be examined as a whole to determine whether consideration appeared anywhere in the agreement.

---

notify, the other parties to the contract."); *Morrison v. Amway Corp.*, 517 F.3d 248, 257-58 (5th Cir. 2008) (finding based on Texas law that because the defendant could amend the arbitration agreement at any time, the arbitration agreement was illusory and unenforceable); *Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753, 759-61 (7th Cir. 2001) (same); *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315-16 (6th Cir. 2000) (same). For the same reasons that the Court does not find the Eleventh Circuit cases previously discussed persuasive to this case, the Court likewise finds these cases unpersuasive.

*Id.* Simply stated, the Court found that the challenge was "to the entire agreement, because the arbitration provision would be unenforceable only if the entire agreement [wa]s unenforceable." *Id.* at 1211. Finally, the Court stated that it was "undeniable" that the plaintiffs argument "attack[ed] the entire Internet-service agreement, rather than just the arbitration provisions, because the argument [was] based on language outside those provisions." *Id.* Therefore, the challenge was to the contract as a whole and not specifically to the arbitration provision, and was a matter to be determined by the arbitrator. *Id.*

Other courts have reached the same conclusion. For example, in *Domato v. Time Warner Cable, Inc.*, No. 13-CV-994 (ARR) (RML), 2013 WL 3968765, at *5 (E.D.N.Y. July 31, 2013), the United States District Court for the Eastern District of New York concluded that it had "no occasion to consider the merits" of the party opposing arbitration's argument that the arbitration contract was illusory due to a reservation of the right to amend the contract because "the argument relates to a potential defect in the contract as a whole, and not specifically to the arbitration clause," making it an issue for the arbitrator to decide pursuant to the Supreme Court's holding in *Buckeye*. The district court was not persuaded by cases holding otherwise because they did not take into consideration the Supreme Court's prior holdings regarding challenges to contracts versus arbitration clauses. *Id.* The court stated that "[m]ore compelling are cases that apply the Supreme Court's precedents," which "overwhelmingly reach[ed] the conclusion that the issue of illusoriness of the whole contract must be resolved by the arbitrator." *Id.* at *6. This Court agrees.

Here, the parties entered into an agreement to arbitrate and this Court will enforce that agreement. Moreover, because the arbitration agreement in this case contains a provision delegating issues of arbitrability of any claim to the arbitrator, whether Plaintiff's claim falls within

13

the scope of the arbitration agreement is also for the arbitrator to decide. Doc. 9-1 at 18; *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005).

### B.  Dismissal versus Stay

Defendant requests that the Court compel arbitration and dismiss the claims against it or, alternatively, stay the proceedings pending completion of arbitration. Doc. 8 at 1, 13. Pursuant to § 3 of the FAA,

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

The Eleventh Circuit has previously indicated that a stay, rather than dismissal, is preferred where a stay is requested. *Spinner v. Credit One Bank, N.A.*, No. 6:17-cv-340-Orl-37TBS, 2017 WL 6731967, at *1 n.1 (M.D. Fla. Dec. 29, 2017) (citing *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992)); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC, USW Local 200 v. Wise Alloys, LLC*, 807 F.3d 1258, 1268 (11th Cir. 2015) (stating that a stay is proper where section 3 of the FAA is applicable and requested). Other decisions in this district reach a similar conclusion. *Fraser v. Perkins & Marie Callender's LLC*, No. 8:16-cv-3226-T-23AEP, 2016 WL 7492464, at *1 (M.D. Fla. Dec. 30, 2016) (stating that the Court could not dismiss the action upon compelling arbitration, but was required by section 3 to stay the action); *In re Wiand*, No. 8:10-CV-71-T-17MAP, 2011 WL 4530203, at *14-15 (M.D. Fla. Sept. 29, 2011). The Court will stay this proceeding pending the arbitration of Plaintiff's claims. Accordingly, it is

**ORDERED**:

1. Defendant Checkr, Inc.'s Motion to Compel Arbitration (Doc. 8) is **GRANTED**.

2. Plaintiff is compelled to arbitrate his claims against Defendant as asserted herein.

3. This action is **STAYED** pending completion of arbitration. The parties shall file a notice informing the Court that the arbitration has been concluded, or that their dispute has otherwise been resolved, within **FOURTEEN (14) DAYS** of either of such event and immediately dismiss the case, if appropriate.

4. The Clerk is directed to terminate all pending motions and deadlines and administratively close this case.

**DONE AND ORDERED** in Tampa, Florida on November 25, 2019.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any